JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Janelle Wolfe, on behalf of her minor daughter, Sloane Wolfe

## DEFENDANTS

Twin Valley School District

**(b)** County of Residence of First Listed Plaintiff    Chester, PA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Berks, PA
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Richard T. Ting & Sara J. Rose, ACLU of Pennsylvania, P.O. Box 23058, Pittsburgh, PA 15222. 412-681-7736. Michael E. Neminski, Baker & Hostetler LLP, 1735 Market St., Ste. 3300, Philadelphia, PA 19103. 215-568-3100.

Attorneys *(If Known)*

Leah Rotenberg, Mays & Rotenberg, 1235 Penn Ave., Ste. 202, Wyomissing, PA 19610.

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | **INTELLECTUAL** | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 880 Defend Trade Secrets | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | Act of 2016 | (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | | ☐ 485 Telephone Consumer |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | **SOCIAL SECURITY** | Protection Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| | Medical Malpractice | | Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 870 Taxes (U.S. Plaintiff | Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | or Defendant) | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party | ☐ 899 Administrative Procedure |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | 26 USC 7609 | Act/Review or Appeal of |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | Agency Decision |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | ☐ 950 Constitutionality of |
| | Other | ☐ 550 Civil Rights | Actions | | State Statutes |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from Another District *(specify)*    ☐ 6 Multidistrict Litigation - Transfer    ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 1983; 20 U.C. § 4071

Brief description of cause:
Violation of First Amendment to the U.S. Constitution and Equal Access Act for failure to recognize student club

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
Preliminary Injunction

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE _____ DOCKET NUMBER _____

DATE 11/15/2023

SIGNATURE OF ATTORNEY OF RECORD

## FOR OFFICE USE ONLY

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: Chester County, PA

Address of Defendant: Berks County, PA

Place of Accident, Incident or Transaction: Berks County, PA

---

**RELATED CASE IF ANY:**

Case Number:_____ Judge:_____ Date Terminated_____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?                                          Yes [ ]   No [X]
2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit Pending or within one year previously terminated action in this court?        Yes [ ]   No [X]
3. Does this case involve the validity or infringement of a patent already in suit or any earlier Numbered case pending or within one year previously terminated action of this court?   Yes [ ]   No [X]
4. Is this case a second or successive habeas corpus, social security appeal, or pro se case filed by the same individual?                                                             Yes [ ]   No [X]

I certify that, to my knowledge, the within case [ ] is /[X]  is not related to any now pending or within one year previously terminated action in this court except as note above.

DATE: _____*Neminski*_____           _____333172_____
                  **Attorney-at-Law** (*Must sign above*)                    **Attorney I.D. #** (*if applicable*)

---

**Civil (Place a √ in one category only)**

**A.** *Federal Question Cases:*

- [ ] 1. Indemnity Contract, Marine Contract, and All Other Contracts)
- [ ] 2. FELA
- [ ] 3. Jones Act-Personal Injury
- [ ] 4. Antitrust
- [ ] 5. Wage and Hour Class Action/Collective Action
- [ ] 6. Patent
- [ ] 7. Copyright/Trademark
- [ ] 8. Employment
- [ ] 9. Labor-Management Relations
- [X] 10. Civil Rights
- [ ] 11. Habeas Corpus
- [ ] 12. Securities Cases
- [ ] 13. Social Security Review Cases
- [ ] 14. Qui Tam Cases
- [ ] 15. All Other Federal Question Cases. *(Please specify)*:_____

**B.** *Diversity Jurisdiction Cases:*

- [ ] 1. Insurance Contract and Other Contracts
- [ ] 2. Airplane Personal Injury
- [ ] 3. Assault, Defamation
- [ ] 4. Marine Personal Injury
- [ ] 5. Motor Vehicle Personal Injury
- [ ] 6. Other Personal Injury (*Please specify*):_____
- [ ] 7. Products Liability
- [ ] 8. All Other Diversity Cases:  *(Please specify)*_____
  _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration)*

I, Michael Neminski, counsel of record *or* pro se plaintiff, do hereby certify:

- [ ] Pursuant to Local Civil Rule 53.2 § 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

- [X] Relief other than monetary damages is sought.

DATE: __11/15/2023__          __*Neminski*__          __333172__
                              **Attorney-at-Law** (*Sign here if applicable*)          **Attorney ID #** (*if applicable*)

NOTE: A trial de novo will be a jury only if there has been compliance with F.R.C.P. 38.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JANELLE WOLFE, ON BEHALF OF HER MINOR DAUGHTER, SLOANE WOLFE,<br><br>    Plaintiffs,<br><br>v.<br><br>TWIN VALLEY SCHOOL DISTRICT,<br><br>    Defendant. | **Civil Action No.: _____**<br><br> Hon.  [Judge] |

## VERIFIED COMPLAINT

Plaintiff Janelle Wolfe brings this action for declaratory and injunctive relief on behalf of her minor daughter, Sloane Wolfe, against Defendant Twin Valley School District for violations of the First Amendment to the United States Constitution and the Equal Access Act, 20 U.S.C. § 4071, *et seq.*

## INTRODUCTION

1.     For more than three years, Twin Valley School District ("District") has suppressed the rights of students, including Sloane Wolfe and her older sister, Arden Wolfe, to exercise one of the most cherished rights enshrined in the Constitution: the right to criticize their government without facing viewpoint discrimination.

2.     Since June 2020, the Wolfe sisters, along with other likeminded students in the Twin Valley School District, have tried to establish a high school student club called "Retire the Raider," focused on cultural competency and addressing Native American cultural appropriation—including through advocating for replacement of the District's mascot and logo, a stereotypical

indigenous American figure—and education of students and community members about indigenous culture.

3.      But the Wolfe sisters and their supporters have faced tremendous pushback, vitriol, and even threats from members of the Twin Valley community who want to "preserve" the Raider.

4.      Specifically, the District has refused to recognize Retire the Raider as an official student club and unlawfully discriminated against it and the Wolfes every step of the way, solely because District officials do not like the club's message.

5.      Meanwhile, the District has recognized other noncurriculum-related student clubs, including The Awakening, a Christian club; E-sports video-game club; a leadership experience and opportunity (LEO) club; Mini-Thon, which raises money for pediatric cancer; Sips of the Valley, a hot beverage and discussion club; and Ski Club.

6.      The District's refusal to recognize Retire the Raider as an official student club denies Sloane and other students basic privileges afforded to every other school club, including, *inter alia*, the equal ability to hold regular meetings; equal access to sources of funding; recognition on the Twin Valley High School Activities webpage; and the equal right to advertise club meetings, events, and field trips. This denial of equal access violates the free speech clause of the First Amendment to the United States Constitution and the federal Equal Access Act.

7.      By officially recognizing other noncurriculum-related student clubs, the District has established a limited public forum. It cannot deny access to that forum on the basis of a student club's viewpoint. But that is exactly what the District has done here.

8.      Additionally, the Equal Access Act ("EAA") prohibits "any public secondary school . . . which has a limited open forum," including Twin Valley High School, "to deny equal access or a fair opportunity to, or discriminate against, any students who wish to conduct a meeting

within that limited open forum on the basis of the religious, political, philosophical, or other content of the speech at such meetings." The District's refusal to provide the same access to school facilities to Retire the Raider as it provides to other noncurriculum-related student clubs violates the EAA.

9.      Accordingly, Plaintiffs seek a declaratory judgment that the District's discriminatory treatment of Retire the Raider violates the First Amendment and the EAA, and preliminary and permanent injunctive relief requiring the District to recognize Retire the Raider as an official school club with all attendant privileges; nominal damages; and other relief as set forth below.

## THE PARTIES

10.      Plaintiff Sloane Wolfe is a fifteen-year-old student in the 10th grade at Twin Valley High School within the Twin Valley School District. She lives in Morgantown, Pennsylvania, with her mother and father.

11.      Plaintiff Janelle Wolfe is Sloane's mother and brings this action on behalf of her minor daughter, Sloane Wolfe.

12.      Defendant Twin Valley School District ("the District") is a political subdivision of the Commonwealth of Pennsylvania spanning portions of Berks and Chester Counties.

13.      The District maintains its administrative offices at 4851 N. Twin Valley Road, Elverson, Pennsylvania.

14.      The District receives federal financial assistance.

15.      Sloane Wolfe has been—and continues to be—subject to the Defendant's actions, customs, policies, and practices complained of herein.

## JURISDICTION AND VENUE

16.     Plaintiffs bring this action under 42 U.S.C. § 1983 for violations of civil rights under First and Fourteenth Amendments to the U.S. Constitution and the Equal Access Act, 20 U.S.C. §§ 4071-74.

17.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 because Plaintiffs' claims arise out of federal law and the United States Constitution.

18.     This Court has personal jurisdiction over this action because Defendant resides in Pennsylvania and the acts or omissions giving rise to Plaintiffs' claims occurred in this District.

19.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant Twin Valley School District resides in this District, and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## FACTUAL BACKGROUND

**A.     Some Students, Staff, and Community Members Start Campaign to Retire the Raider.**

20.     Since the 1960s, the Twin Valley School District's mascot has been "the Raider," represented by various stereotypical images of an indigenous or "Native" American figure.

  

21.     Prior iterations of the mascot even incorporated hatchets in the image of the indigenous figure.



22.     Some students and community members find the Raider mascot deeply offensive because it appropriates the image of an indigenous person as a symbol for a mostly non-indigenous school district and stereotypically associates indigenous culture with violence.

23.     Because of these concerns, in June 2020, Twin Valley High School student Arden Wolfe led a group of students who began contacting Twin Valley School Board ("Board") members and school administrators to open a discussion about changing the mascot and/or the name "Raider."

24.     Initially, Arden sought to have the high school participate in "No Place for Hate," a student-led diversity-and-inclusion program created by the Anti-Defamation League and tailored to each school's needs and cultural climate.

25.     Arden wanted to use "No Place for Hate" to educate the students and community members about indigenous culture in the hopes that it would persuade them to change the mascot.

26.     In June 2020, Arden contacted the Board about the initiative.

27.     The Board directed Arden to speak to high school administrators first before raising the students' concerns to the Board.

28.    Arden emailed high school Principal William Clements about the "No Place for Hate" program, asked him to submit a School Intent Form that would allow the high school to participate in the "No Place for Hate" program, and informed him that more than thirty students had already expressed interest in joining the steering committee for the program.

29.    In July 2020, after repeated attempted communications from Arden, Principal Clements refused to submit the School Intent Form for "No Place for Hate," stating that "we are going to focus our efforts on supporting" a different, ill-defined diversity initiative led by the Student Council while allowing the Student Council a full school year "to review the merits" of "No Place for Hate."

30.    This decision effectively killed the "No Place for Hate" initiative.

31.    Arden and several of her classmates then decided to challenge the Raider mascot more directly by (a) raising the mascot issue directly with the Board throughout the 2020–21 and 2021–22 school years, and (b) trying to start a new club, called "Retire the Raider," at the high school to discuss and promote the students' efforts to change the school's mascot and address cultural appropriation more generally.

32.    Throughout the 2020–21 and 2021–22 school years, the Board and District administration rebuffed repeated efforts by Arden and other students to discuss their concerns about the Raider mascot or establish a student club for the purposes of furthering this discussion.

33.    When Arden graduated in 2022, her younger sister, Sloane Wolfe, entered Twin Valley High School as a ninth grader and took over Arden's efforts to get official club recognition for Retire the Raider and end the use of the mascot.

34.    From the start, the Wolfe sisters' attempts to retire the Raider were controversial, generating both supporters and detractors inside and outside of the school district.

35.     The Wolfe sisters were frequent participants at Board meetings, and they and their supporters repeatedly urged the Board to put the mascot issue on its official agenda.

36.     Sloane has spoken about retiring the Raider during the public comment periods at more than forty Board meetings.

37.     Her older sister Arden and dozens of other students and community members have also attended and spoke about retiring the Raider during the public comment periods at Board meetings.

38.     As just one example, during the public comment period of a July 13, 2020, Board meeting, a Twin Valley alumnus spoke out against the mascot, stating that it is "offensive and perpetuate[s] hate and racism."

39.     Additionally, in an email to Arden about the July 13, 2020, Board meeting, Faculty Member 1[1] also expressed their support for retiring the Raider, stating that "[t]he President of the board deflected the concern back to high school administration. I'm wondering if this was something we could attempt to change? Maybe start an online petition?"

40.     Another student, J.B., had in fact started an online petition to retire the Raider.

41.     Over the course of three years, Retire the Raider generated support both inside and outside Twin Valley School District.

42.     On February 22, 2022, Pennsylvania Representative Christopher Rabb attended and spoke in support of Retire the Raider during the Board's public comment period.

---

[1]     In light of past threats of retaliation against faculty members who have supported Retire the Raider, Plaintiffs are not disclosing the name of Faculty Member 1 at this time. Plaintiffs will move for a protective order addressing the terms under which Faculty Member 1's identity will be disclosed to opposing counsel.

43.     But Retire the Raider's message also faced significant pushback and even vitriol, including from school faculty and administrators.

44.     For example, some members of the community occasionally used the public comment period of Board meetings to speak in favor of "preserving" the Raider.

45.     Other members of the community created social media pages to smear the Wolfes. For instance, Michelle Raymond, who is now a member of the Twin Valley School Board, was the administrator of the Facebook group, "Save the Raider," in which several disparaging comments about the Wolfes were posted.

46.     A farcical online petition was even created to expel J.B. from Twin Valley High School.

47.     Worse, others used these groups to threaten the Wolfes.  These online threats led to real-life action: On at least one occasion, someone followed the Wolfes' car home at night after a Board meeting.

48.     At school, students often tore down or vandalized Retire the Raider posters.

49.     Meanwhile, the Board stonewalled the Wolfes.

50.     Despite students and community members speaking out against the mascot at Board meetings almost monthly for the past three years, the Board has refused to put the issue on its official agenda for discussion to this day.

51.     The Board has also refused to respond to comments about the mascot during the public comment periods, asserting that "the law does not permit" it to do so.

52.     The Board has, however, responded to statements on other topics made during the public comment period.

53.     And at least one Board member has made comments supporting "preserving" the Raider during the Board's post-comment discussions.

**B.     Officially Recognized Student Clubs Receive Numerous Privileges.**

54.     It is within this controversial atmosphere that the Wolfe sisters have fought unsuccessfully for three years to have their Retire the Raider group recognized as an official Twin Valley High School student club.

55.     Officially recognized student clubs receive a host of privileges not ordinarily provided to other student groups and informal associations.

56.     For example, only officially recognized student clubs appear in the list of clubs available on the school's website.

57.     Officially recognized student clubs are permitted to hold regular meetings in school facilities.

58.     Although other student groups are sometimes permitted to use school facilities for their meetings, they are not always permitted to do so, as explained below. *See* Part D, *infra*.

59.     Moreover, only officially recognized student clubs are allowed to meet during "flex" time, which occurs during school hours.

60.     Officially recognized student clubs are also permitted to advertise on a large, spacious wall within the high school where students expect to find information about clubs and events.

61.     By contrast, other student groups who wish to distribute messages are relegated to a much smaller, less prominent wall near the entrance of the school.

62.     Only officially recognized student clubs are included in the club list on the community surveys sent out to students and parents in the Fall.

63.     Only officially recognized student clubs are eligible to receive Twin Valley Community Education grants.

64.     Only official clubs can have a student activity account to raise and manage funds under school policy.

**C.    The District Refuses to Recognize Retire the Raider as a Student Club Because of the Lack of a "Willing" Faculty Advisor.**

65.     Arden first attempted to start a student club designed to promote the adoption of a new school mascot in summer 2020.

66.     Although there is no district policy setting forth the requirements for a student club to receive official recognition and the associated benefits, the District's website states: "Students interested in starting new clubs at Twin Valley High School should adhere to the following process: (1) Identify a faculty or staff member willing to serve as the advisor. (2) Complete a 'Request to Meet With an Administrator' form in the High School Office. Note the name of the proposed club under 'Reason for meeting'. (3) Meet with the principal to request approval to move forward. (4) If approved, advertise the first meeting with a flyer authorized by the advisor." *Student Activities*, TWIN VALLEY HIGH SCHOOL, (Nov. 14, 2023 2:19 PM) https://sites.google.com/tvsd.info/tvhs-activities/home.

67.     Arden Wolfe reached out to a faculty member in June 2020 to serve as advisor to the club.

68.     In July 2020, Faculty Member 1 told Arden Wolfe, "If you are in need of a faculty member to assist you and offer a room for you to hold meetings during flex, I happily offer my assistance."

69.     Faculty Member 1 reiterated their willingness to serve as advisor to the club in August 2020, stating "If it can be its own club, like I said, I'd be happy to advise it or do whatever you need."

70.     By October 2020, however, Faculty Member 1 changed their mind—not because they no longer wanted to advise Retire the Raider, but because ***"Mr. Clements told me that he doesn't want staff involved in the initiative."***

71.     Since then, no other willing faculty member has come forward to serve in the advisor role, and at least two other faculty members have specifically declined student requests to advise Retire the Raider because they were told by a superior not to get involved and were afraid of retaliation.

72.     Despite Arden's and Sloane's persistent efforts, the District has repeatedly refused to officially recognize Retire the Raider as a student club, purportedly because it has been unable to recruit a faculty advisor.

73.     As a result of the District's refusal to officially recognize it as a student club, Retire the Raider has been denied the following benefits and privileges accorded to other noncurriculum-related student clubs:

- The ability to hold regular meetings at school, including during "flex" time, which is part of the school day.

- The ability to post flyers in the same manner as officially recognized student clubs.

- Inclusion on the Twin Valley High School Student Activities page on the District's website, which lists and links to information about other

noncurriculum-related clubs, including a Christian student club, the E-sports student club, the ski club, and fundraising clubs.

*Student Activities*, TWIN VALLEY HIGH SCHOOL, (Nov. 14, 2023 2:19 PM) https://sites.google.com/tvsd.info/tvhs-activities/home.

- Inclusion on the list of clubs in the community surveys provided to parents and students.

- Access to certain financial benefits, including a school-managed student activity account and Twin Valley Community Education grants.

74. On January 24, 2022, counsel for the Wolfes sent a letter to the District explaining that its refusal to officially recognize Retire the Raider as a student club violated the First Amendment and Equal Access Act. The January 24 letter is attached as Exhibit 1.

75. The District's solicitor responded on February 4, 2022, stating that "students may form a Retire the Raider student club once they recruit a faculty advisor, as required of all school clubs." The District's February 4 letter is attached as Exhibit 2.

76. Counsel for the Wolfes responded to the solicitor's letter on March 11, 2022, explaining that the EAA does not permit the District to condition approval of a student-run club on the presence of a "willing" faculty advisor.

77. The District has nonetheless refused to appoint a faculty advisor for the club based on its assertion that it cannot require a member of the collective bargaining unit to take on extra work beyond their contractual work day.

78. The District ultimately offered to assign an administrator to supervise up to four club meetings per school year, on a quarterly basis, if two or more students participate.

79.     But the District has refused to recognize Retire the Raider as an official student club in the absence of a "willing" faculty advisor.

80.     Additionally, the assigned administrator, Principal Clements, has not made himself reasonably available for quarterly meetings as promised.

81.     The District's counsel via email on June 9, 2023 suggested a District employee who might be willing to serve as Retire the Raider's faculty advisor.

82.     Sloane contacted that employee to ask if they would be interested in being Retire the Raider's club advisor.

83.     That employee works at Twin Valley Middle School, which is in a different building and on a different schedule than Twin Valley High School.

84.     Due to the different school locations and schedules, the employee would be unable to supervise Retire the Raider activities during the school day, such as during lunch or during flex time.

85.     The employee, therefore, declined Sloane's invitation for the employee to serve as Retire the Raider's faculty advisor.

86.     According to the District, a faculty advisor is necessary for three reasons: Managing a club's email address and outside correspondence; managing money and spending; and locking up district facilities after meetings.

87.     Specifically, the District has said that an adult must be in charge of student clubs' public-facing email accounts.

88.     The Twin Valley High School Activities webpage lists 43 activities.

89.     None have an email address listed.  Instead, they include a link stating "Please click here to initiate contact with a club/activity advisor."   The link is to a Google form. *Student*

*Activities*, TWIN VALLEY HIGH SCHOOL, (Nov. 14, 2023 2:19 PM) https://sites.google.com/tvsd.info/tvhs-activities/home.

90.     Some activities do not list faculty advisors on the webpage. No faculty advisor is listed for Athletics, Open Lifting Schedule, or Peer Intervention.

91.     For the remaining 40 activities, three list an advisor who does not appear in any of the staff directories on the District's website.

92.     Based on the staff directories on the District's website, each of the remaining 37 activities listed on the Twin Valley High School Activities webpage has an advisor who works at Twin Valley High School. Some student clubs have multiple advisors listed.

93.     Counsel for Plaintiffs reached out to the District's solicitor via letter again on October 5, 2023, to ask that the District extend the same access and benefits to Retire the Raider that it provides to other noncurriculum-related clubs and cease enforcing the faculty advisor requirement for student clubs.

94.     The District, by letter dated October 13, 2023, refused Plaintiffs' requests.

### CLAIM I

### Violation of the First Amendment to the U.S. Constitution

95.     Plaintiffs incorporate the preceding allegations as though fully set forth herein.

96.     The District has intentionally created a forum that allows student clubs to use school facilities to hold meetings and advertise club-related information.

97.     The District's refusal to allow Retire the Raider the same access to the forum as other student clubs is based on the viewpoint and content of Retire the Raider's speech.

98.     Specifically, the District, by chilling staff and faculty members from providing support to the club, has made it impossible for Retire the Raider to meet the District's requirement that student clubs secure a willing faculty advisor to access the forum.

99.     The District's requirement that student clubs find a willing faculty advisor to receive official recognition and its concomitant benefits discriminates against clubs expressing unpopular or controversial viewpoints.

100.    The District's refusal to allow Retire the Raider the same access to the forum as other student clubs serves no rational, legitimate, significant, or compelling governmental interest.

## CLAIM II

### Violation of the Equal Access Act, 20 U.S.C. § 4071 *et seq.*

101.    Plaintiffs incorporate the preceding allegations as though fully set forth herein.

102.    The District has created a limited open forum at Twin Valley High School for student clubs because it has officially recognized noncurriculum-related school clubs and allows those clubs to meet on school premises during noninstructional time.

103.    The District has denied Retire the Raider equal access to the school's limited open forum by denying it benefits available to other clubs, including but not limited to:

    a.   the ability to have regular meetings;

    b.   the ability to meet during flex time;

    c.   the ability to advertise and recruit members on equal footing with other clubs;

    d.   being listed on the Twin Valley High School Activities webpage;

    e.   the ability to have a school-managed student activity account; and

    f.   the ability to apply for Twin Valley Community Education grants.

104.    The District's requirement that Retire the Raider secure a willing faculty advisor in order to hold meetings on the same terms as other noncurriculum-related groups constitutes discrimination on the basis of the content of the meetings, in violation of the EAA.

105.    The District's requirement that only student clubs with a willing faculty advisor are allowed access to the limited open forum violates the EAA by discriminating against student clubs with controversial or unpopular viewpoints.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully ask this Court to:

a) declare that Defendant's refusal to provide Retire the Raider with the same access to school facilities as other noncurriculum-related student groups violates the free-speech clause of the First Amendment and the federal Equal Access Act;

b) preliminarily, and thereafter permanently, enjoin Defendant and its officers, agents, affiliates, subsidiaries, servants, employees, successors, and all other persons or entities in active concert or privity or participation with them from continuing to unlawfully deny Retire the Raider the same access to District facilities that other noncurriculum-related student clubs enjoy;

c) award Plaintiffs damages in an amount to be determined at trial;

d) award Plaintiffs attorneys' fees and costs; and

e) grant such other relief as the Court may deem just and equitable.

Dated: November 15, 2023

/s/ Richard T. Ting
Richard T. Ting (PA No. 200438)

/s/ Sara J. Rose
Sara J. Rose (PA No. 204936)
**ACLU OF PENNSYLVANIA**
PO Box 23058
Pittsburgh, PA 15222
(412) 681-7736
rting@aclupa.org
srose@aclupa.org

/s/ Michael E. Neminski
Michael E. Neminski (PA No. 333172)
**BAKER & HOSTETLER LLP**
1735 Market Street
Suite 3300
Philadelphia, PA  19103-7501
(215) 568-3100
mneminski@bakerlaw.com

*Attorneys for Plaintiffs*

## **VERIFICATION**

I declare under penalty of perjury under the laws of the United States of America that the factual allegations in the foregoing Verified Complaint are true and correct.

Executed on: 11/13/23

Janelle Wolfe

# **<u>EXHIBIT 1</u>**

January 24, 2022

(via email)

Patrick Winters, Superintendent
Twin Valley School District
4851 N. Twin Valley Road
Elverson, PA 19520

William Clements, Principal
Twin Valley High School
4851 N. Twin Valley Road
Elverson, PA 19520



Eastern Region Office
PO Box 60173
Philadelphia, PA 19102
215-592-1513 T
215-592-1343 F

Central Region Office
PO Box 11761
Harrisburg, PA 17108
717-238-2258 T
717-236-6895 F

Western Region Office
PO Box 23058
Pittsburgh, PA 15222
412-681-7736 T
412-681-8707 F

RE: Approval of Retire the Raider & No Place for Hate
Clubs, and Cessation of Student Speech Suppression

Dear Mr. Winters and Mr. Clements:

The American Civil Liberties Union of Pennsylvania
("ACLU") represents Arden and Sloane Wolfe, who have been
advocating to change the Twin Valley School District ("TVSD")
mascot and establish school clubs focused on diversity, equity and
inclusion issues. We understand that school administrators
prevented students from forming a "Retire the Raider" student club
and a "No Place for Hate" student club, and repeatedly threatened
students with discipline for engaging in protected activism around
the TVSD mascot. These actions by the school and the district
violate federal law and the United States Constitution. We write to
demand that you immediately approve the Retire the Raider and No
Place for Hate clubs, remove any information from Arden's
disciplinary record related to her activism, and provide assurances
that no student will be disciplined for engaging in protected speech
moving forward.

The school district's refusal to allow a Retire the Raider club or No Place for Hate
student club is patently unconstitutional. Under the First Amendment to the U.S. Constitution,
the district must treat the Retire the Raider and No Place for Hate clubs the same as any other
non-curricular student club.[1] This means, among other things, that the district may not create a
more difficult approval process than the approval process faced by other non-curricular clubs –
such as by forbidding faculty involvement or delaying approval for an unspecified period of time
despite the satisfaction of all requirements.

---

[1] *See, e.g., Prince v. Jacoby*, 303 F.3d 1074, 1090 (9th Cir. 2002) (holding that treating one non-curricular club
differently than other non-curricular clubs due to the club's purpose violated student free speech rights).

The federal Equal Access Act ("EAA") also requires federally funded secondary schools that permit meetings of non-curriculum-related student groups to provide equal access to all students wishing to form such groups. 20 U.S.C. § 4071. The purpose of the Equal Access Act is to "prohibit discrimination between religious or political groups . . . and other non-curriculum-related groups."[2] Courts consistently uphold the Equal Access Act's protection for students who seek to form student clubs that school administrators disagree with.[3]

We understand that TVSD already allows a number of non-curricular school clubs to operate, including the Ski Club, Mini-THON, and Pride Network. Under the EAA, the District may not deny approval of the Retire the Raider and No Place for Hate clubs based on disapproval of either club's speech, activities, name or student leadership. We also understand that the district prohibited teachers from serving as faculty advisors for either student club, which *de facto* prevents a club's formation. Under the EAA, the District may not subject the club to arbitrary roadblocks that it did not create for other prospective non-curricular clubs, such as forbidding teacher involvement as advisors.[4] As such, the District's actions regarding both the Retire the Raider club and the No Place for Hate club violate the EAA.

In addition to improperly denying students their right to form a club, the school district has also engaged in a pattern of disciplinary actions that "chill" student speech on campus. The Supreme Court has repeatedly held that the threat of sanctions – even if no formal sanctions are ultimately imposed – can be enough to constitute a First Amendment violation, given the vulnerable nature of free speech rights.[5] We understand that the school district has taken all of the following actions to chill Arden's activism regarding the Raider mascot:

- Punishing Arden with an unwarranted Acceptable Use Policy Violation for "spam" after she sent an email about the campaign to the student body.
- Threatening Arden with disciplinary action after she distributed posters about the Retire the Raider campaign.
- Reporting a false "character" violation to the National Honor Society and asking that the organization remove Arden after she spoke to the school board in September regarding the district mascot.

---

[2] *See Bd. of Educ. of Westside Cmty. Schs. v. Mergens*, 496 U.S. 226, 238 (1990).
[3] *See, e.g.*, *Pratt v. Indian River Cent. Sch. Dist.*, 803 F. Supp. 2d 135 (N.D.N.Y. Mar. 29, 2011); *Straights and Gays for Equality v. Osseo Area Schools-Dist. No. 279*, 540 F.3d 911 (8th Cir. 2008); *Gay-Straight All. of Yulee High Sch. v. Sch. Bd of Nassau Cnty.*, 602 F. Supp. 2d 1233 (M.D. Fla., March 11, 2009); *Gonzalez v. Sch. Bd. of Okeechobee Cnty.*, 571 F. Supp. 2d 1257 (S.D. Fla. 2008); *White Cnty. High Sch. Peers Rising in Diverse Educ. v. White Cnty. Sch. Dist.*, No. 2:06-CV-29WCO, 2006 WL 1991990 (N.D. Ga. July 14, 2006); *Donovan v Punxsutawney Area Sch. Bd.*, 336 F.3d 211 (3d Cir. 2003), *cert denied*, 540 U.S. 813 (2003); *Boyd Cnty. High Sch. Gay Straight All. v. Bd. of Educ. of Boyd Cnty.*, 258 F. Supp. 2d 667 (E.D. Ky. 2003); *Franklin Cent. Gay/Straight All. v. Franklin Twp. Cmty. Sch. Corp.*, No. IP01-1518 C-M/S, 2002 WL 32097530 (S.D. Ind. Aug. 30, 2002); *Colin v. Orange Unified Sch. Dist.*, 83 F. Supp. 2d 1135, 1148 (C.D. Cal. 2000); *East High Gay/Straight All. v. Bd. of Educ. of Salt Lake City Sch. Dist.*, 81 F. Supp. 2d 1166 (D. Utah 1999); *Pope v East Brunswick Bd. of Educ.*, 12 F.3d 1244 (3d Cir. 1993). The First Amendment's free-speech and assembly clauses also favor the students' right to form political, religious and other clubs, but courts tend to rule under the EAA because application is so straightforward.
[4] *See* 28 U.S.C. § 4071(a).
[5] *See Laird v. Tatum*, 408 U.S. 1, 11 (1972); *N.A.A.C.P. v. Button*, 371 U.S. 415, 433 (1963).

- Restricting Arden's and Sloane's ability to comment on the Twin Valley School District Instagram account.

These actions create a real and imminent fear of sanctions for students who wish to speak out concerning the mascot, in violation of the First Amendment of the U.S. Constitution. Moreover, the suppression of a citizen's comments on a government social media account because the citizen expressed criticism of the government's actions (or lack thereof) is viewpoint-based censorship that also violates the First Amendment.[6]

Please provide us with assurances **no later than Friday, February 4** that (1) the proposed Retire the Raider and No Place for Hate student clubs have been approved; (2) any restrictions on Arden and Sloane's ability to comment on TVSD social media posts are lifted; (3) any speech-related infractions have been expunged from Arden's disciplinary record; and (4) the school district will adopt and follow policies to ensure that students are not disciplined for engaging in protected speech moving forward. If TVSD fails to provide these assurances by the deadline, absent a compelling explanation conveyed to us, we will consider all available legal option, including seeking a federal court injunction ordering the District to comply with our request. Any request for legal redress will include a request that TVSD pay our attorneys' fees. Please do not hesitate to let us know if you have any questions or concerns. If you have questions or wish to discuss our demand, please contact me at 215-592-1513 x116 or sloney@aclupa.org. We look forward to hearing from you.

Sincerely,

Stephen Loney
Senior Supervising Attorney

Connor Hayes
Legal Fellow

---

[6] *See, e.g., Davison v. Randall*, 912 F.3d 666, 688 (4th Cir. 2019), *as amended* (Jan. 9, 2019) (holding that chair of a county board of supervisors violated First Amendment by banning plaintiff from the chair's Facebook page after plaintiff made comments alleging government corruption); *Robinson v. Hunt Cty., Tex.*, 921 F.3d 440, 445 (5th Cir. 2019) (holding that sheriff unconstitutionally prevented plaintiff from speaking by deleting her comment and banning her account from his Facebook page); *Windom v. Harshbarger*, 396 F. Supp. 3d 675, 683-84 (N.D.W. Va. 2019) (state representative blocked plaintiff after plaintiff criticized a bill that the representative supported); *One Wis. Now v. Kremer*, 354 F. Supp. 3d 940, 956 (W.D. Wis. 2019) (officials blocked plaintiff due to plaintiff's liberal perspective); *Dingwell v. Cossette*, 2018 WL 2926287 (D. Conn. 2018) (city unconstitutionally blocked resident from posting on the police department's Facebook page, in retaliation for public criticism of the department). *See also Attwood v. Clemons*, 526 F. Supp. 3d 1152, 1173 (N.D. Fla. 2021) (noting that although plaintiff had other social media accounts that were not blocked, blocking of one account still constituted an unconstitutional restriction on speech). *Cf. Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995) ("The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction."); *Pittsburgh League of Young Voters Educ. Fund v. Port Auth. of Allegheny Cnty.*, 653 F.3d 290, 296 (3d Cir. 2011) ("[I]f the government allows speech on a certain subject, it must accept all viewpoints on the subject even those that it disfavors or that are unpopular.") (internal citations omitted).

CC:     Leah Rotenberg, Esq. (via email, rotenberg@mcr-attorneys.com)

# **<u>EXHIBIT 2</u>**



**1235 Penn Avenue, Suite 202, Wyomissing, PA  19610**
**610-400-0481    Fax:  610-350-4608**

February 4, 2022

BY EMAIL AND FIRST CLASS MAIL

Stephen Loney, Senior Supervising Attorney
Connor Hayes, Legal Fellow
ACLU of Pennsylvania
Eastern Region Office
PO Box 60173
Philadelphia, PA  19102

Re:  Your Letter of January 28, 2022

Dear Attorneys Loney and Hayes:

I write in response to your letter of January 28, 2022 to Superintendent Patrick Winters and
Principal William Clements of the Twin Valley School District (hereinafter "the District").  First
and foremost, the District denies that it has prevented students from forming Retire the Raider
and No Place for Hate Clubs or that it has "repeatedly threatened" students with discipline for
engaging in protected speech.  The District has never prevented activism or punished a student
for it.

Regarding the requests made in the final paragraph of your letter, the School District's position is
as follows:

1. Students may form a Retire the Raider student club once they recruit a
   faculty adviser, as is required of all school clubs.  The District has not
   prohibited any teacher from serving as a faculty adviser to the Retire the
   Raider Club.

If Arden and Sloane can identify a candidate, any faculty member is free to participate.  To the
best of my knowledge, no faculty member has been approached to serve as an advisor for the
Retire the Raider effort for more than a year.  Moreover, I could identify only one faculty
member who had been asked for support at any time.  I certainly hope that the ACLU would
encourage its clients to try recruitment prior to filing for injunctive relief.

Stephen Loney, Senior Supervising Attorney
Connor Hayes, Legal Fellow
February 4, 2022
Page 2

Note that the Retire the Raider organization, which sent a mass email to High School constituencies from Arden's email account on October 5, 2020, specifically identified itself as unaffiliated with the District and consisting of not only students but of community members and tribal affiliates (See Attached). The District is required to follow state and federal law regarding background checks for adult volunteers who visit campus and regarding access to students' personally identifiable information, including addresses. If a prospective Retire the Raider Club is affiliated with the Retire the Raider community organization, it is particularly important that a faculty adviser is in place to make sure that the club observes laws aimed at protecting students' safety and privacy.

2. As you likely know, No Place for Hate is a program offered by the Anti-Defamation League (ADL). A quick review of the ADL website indicates that the program is envisioned as a school-wide initiative that involves students, faculty, staff, and family members, and is focused on improving the school climate.

The ADL recommends that as a first step in implementing the program students form a committee that includes adult community members. It is unclear how the proposed club described in your letter fits into the ADL's recommended framework and process for starting a No Place for Hate initiative. It is not my impression that No Place for Hate is a club that students can join, so much as a school-wide initiative that requires interest and investment from different stakeholders.

The District's Student Council had discussed during the 2020-2021 school year whether the ADL's program was best suited to provide support for students and community members in the Twin Valley School District, or whether a homegrown effort at promoting discourse and reflection around diversity would be more effective. The Student Council declined to pursue No Place for Hate affiliation. Although this result may be disappointing to Arden and Sloane, it is not a First Amendment violation.

3. No students are permitted to comment on the District's social media accounts. The District has chosen not to create a public forum online.

4. There are no "speech-related infractions" in Arden's disciplinary file to be expunged. Arden used MailChimp, a third-party vendor, to send the attached email to all or most of the Twin Valley High School community. Use of a third-party vendor to send messages is a violation of the District's acceptable use policy, as the District does not wish to allow students to spam large groups of District email addresses. Arden received a warning not to send bulk email via MailChimp again but was not disciplined. The District's bar on MailChimp and similar services is an appropriate and legal time, place, and manner restriction on speech.

Stephen Loney, Senior Supervising Attorney
Connor Hayes, Legal Fellow
February 4, 2022
Page 3

I would be happy to discuss these matters with you further; litigation is not warranted.  In the
meantime, I have enclosed the paperwork that Arden and Sloane must complete to register a
Retire the Raider Club.  Please ask them to request a meeting with Mr. Clements, along with
their proposed faculty advisor.

Very Truly Yours,

Leah Rotenberg, Esquire
Solicitor
Twin Valley School District

Enclosures

cc:  Dr. Patrick Winters
     Mr. William Clements

## WILLIAM CLEMENTS

**From:**          WILLIAM CLEMENTS
**Sent:**           Monday, October 5, 2020 12:39 PM
**To:**              MATTHEW BARBER
**Subject:**       FW: Retire the Raider.

---------- Forwarded message ---------
From: **Retire the Raider** <22awolfe@tvsd.info>
Date: Mon, Oct 5, 2020 at 7:41 AM
Subject: Retire the Raider.
To: <xx@tvsd.info>



# It's time to Retire the Raider.

Are you offended by the "Raider"? Or do you think it is a piece of Twin Valley's history? If you're thinking of the future where culture is not a costume, consider joining the movement to retire the Twin Valley school mascot. We are a group of student leaders, community members, and tribal affiliates dedicated to ending Native American cultural appropriation. In this club, you'll learn how racism has become normalized in our society and why mascot symbols are offensive to indigenous people. We will be working closely with different tribes around the world, including the Oglala Sioux Tribe to learn about how we can do our part to put an end to the cultural appropriation at our school. This club is NOT affiliated with Twin Valley School District, so we will not hold meetings inside of the school during school hours. Nonetheless, we can be the change and Retire the Raider.

If you are interested in joining the movement, please complete this Google Form. If you have any questions or comments, please email retiretheraider@gmail.com.

1

*Together, we can Retire the Raider.*

**JOIN THE MOVEMENT TODAY**

Follow us on all social media platforms @RetireTheRaider.









*RETIRE THE RAIDER*

Elverson, Pennsylvania

Want to change how you receive these emails?

You can update your preferences or unsubscribe from this list.



This email from TWIN VALLEY SCHOOL DISTRICT, and any attachments may contain privileged and confidential information and are solely for the use of the sender's intended recipient(s). If you received this email in error, please notify the sender by reply email and delete all copies and attachments. This mail service is provided by Google. TWIN VALLEY SCHOOL DISTRICT will adhere to all confidentiality requirements set forth by Google; therefore, the recipient should check the email for threats with proper software, as the sender does not accept liability for any damage inflicted by viewing the content of this email.

This email from TWIN VALLEY SCHOOL DISTRICT, and any attachments may contain privileged and confidential information and are solely for the use of the sender's intended recipient(s). If you received this email in error, please notify the sender by reply email and delete all copies and attachments. TWIN VALLEY SCHOOL DISTRICT puts the security of the client at a high priority. Therefore, we have put efforts into

## REQUEST TO MEET WITH AN ADMINISTRATOR

Today's Date: _____     My Name/Grade: _____

I would like to meet with:

_____ Mr. Clements, Principal

_____ Mr. Barber, Assistant Principal

_____ Dr. Edwards, Assistant Principal

_____ Mr. Guiseppe, Athletic/Activities Director

Reason for meeting: _____