## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JANELLE WOLFE | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 5:23-cv-04501-JLS |
| | : | |
| TWIN VALLEY SCHOOL DISTRICT | : | |

### DEFENDANT'S BRIEF IN SUPPORT OF MOTION
### TO DISMISS PLAINTIFF'S COMPLAINT

Defendant, Twin Valley School District ("School District"), submits this Brief in Support of it Motion to Dismiss the Complaint [ECF No. 1], pursuant to FED.R.CIV.P. 12(b)(1) and 12(b)(6).

## I.      FACTUAL BACKGROUND

Plaintiff Janelle Wolfe ("Plaintiff") filed this action on November 15, 2023 on behalf of her minor daughter, Sloane Wolfe, a student at Twin Valley High School ("TVHS"), seeking declaratory and injunctive relief against the School District. Plaintiff alleges that the School District violated her daughter's rights under the First Amendment to the United States Constitution and the Equal Access Act, 20 U.S.C. § 4071, et seq. The gist of Plaintiff's Complaint is that the School District violated her daughter's rights by failing to recognize her student club, "Retire the Raider" ("RTR") as an "officially recognized student club," thereby allegedly denying it certain benefits afforded only to officially recognized student clubs at TVHS. [ECF No. 1, ¶'s 4, 6, 55-57, 59-64, 73, 79, 103] The purpose of the club was to end the use of the School District's "Raider" mascot, depicted by profile images of a Native-American male wearing a full headdress or two

feathers, which was felt to be offensive for appropriating the image of an indigenous person and promoting a stereotype of indigenous culture as being associated with violence. [ECF No. 1, ¶'s 2, 20-22, 31-33]

Plaintiff alleges that the School District has refused to "officially recognize" RTR because it was unable to recruit a faculty advisor.  [ECF No. 1, § C, ¶'s 72, 75, 79, 867-87] Plaintiff alleges that the TVHS website states that students interested in starting new clubs at TVHS should identify a faculty or staff member willing to serve as the advisor, among other things.  [ECF No. 1, ¶ 66] She alleges that attempts to recruit a willing advisor for the club were unsuccessful due to faculty and staff members' purported fear of retaliation, or due to expressed dissuasion, by others who supported retaining the Raider mascot. [ECF No. 1, ¶'s 34, 39 n.1, 43, 70-71, 98] Plaintiff alleges that the School District's has provided three reasons for requiring an advisor for student clubs: "Managing a club's email address and outside correspondence; managing money and spending; and locking up district facilities after meetings."  And also, "the District has said that an adult must be in charge of student clubs' public-facing email accounts."  [ECF No. 1, ¶'s 86-87]  Plaintiff alleges that the School District's refusal to recognize RTR as an "official student club" in the absence of a "willing" faculty advisor constitutes a violation of her First Amendment and Equal Access Act rights.  [ECF No. 1, § C, Claim I ¶'s 99-100, §C Claim II ¶'s 104-105]

On November 17, 2023, two days after Plaintiff filed her Complaint, a high school teacher volunteered to serve as advisor for RTR. The teacher was appointed that same day and RTR became an approved student club. [*See*, Affidavit of William Clements, Ed.D., Principal of Twin Valley High School, attached hereto as "Exhibit A," ¶ 5] A second high school teacher also volunteered and has been serving as an advisor as well since December 12, 2023. [*Id.*] In light of RTR's becoming an approved student club on November 17, 2023, it began receiving, and

continues to receive, the same benefits as afforded to all other approved student clubs as alleged in Plaintiff's Complaint.

## II.    STANDARD OF REVIEW

### A. FED.R.CIV.P. 12(b)(1).

FED.R.CIV.P. 12(b)(1) provides for the dismissal of a complaint for lack of subject-matter jurisdiction, including on the basis that the subject matter of the claim is or has become moot. In other words, the complaint fails to allege facts upon which subject matter jurisdiction can be based when the factual claims asserted have meanwhile changed and the claims have become moot. *See e.g.*, *Collins v. SBA Rest. Revitalization Fund*, 2024 U.S. Dist. LEXIS 5780, *4-6 (E.D. Pa. 2024) (citing Third Circuit cases). A defendant asserting a Rule 12(b)(1) "factual attack" on the basis that the subject matter of a complaint has become moot is permitted to present competing facts, and the court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case," and "no presumptive truthfulness attaches to [the] plaintiff's allegations." *Hartig Drug Co. v. Senju Pharm. Co*., 836 F.3d 261, 268 (3d Cir. 2016) (citing cases). In doing so, the court "may weigh and consider evidence outside the pleadings." *Id.* Moreover, in reviewing a Rule 12(b)(1) factual attack based on lack of subject matter jurisdiction, "[T]he Court may dismiss … at any time, regardless whether the moving party has filed an answer or the opposing party had an opportunity to conduct discovery." *CNA v. United States*, 535 F.3d 132, 145-146 (3d Cir. 2008) (citing *Berardi v. Swanson Memorial Lodge No. 48 of Fraternal Order of Police*, 920 F.2d 198, 200 (3d Cir. 1990) ("The requirement in [Rule 12(b)(1)] that a motion to dismiss for lack of subject matter jurisdiction must be made 'before pleading if a further pleading is required' would make little sense if the factual basis for subject matter jurisdiction could not be contested until after an answer is filed.")

3

In regard to motions to dismiss that raise both Rule 12(b)(1) and 12(b)(6) arguments, *as is the case here*, "a court should first consider a 12(b)(1) challenge because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and objections become moot." *McCracken v. R.J. Reynolds Tobacco Co*., 2018 U.S. Dist. LEXIS 17232, 2018 WL 692934, at *2 n.22 (E.D. Pa. Feb. 2, 2018) (cited in *Collins, supra*.).

In light of the foregoing standard of review, and for the following reasons, Plaintiff's Complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1). The allegations of fact asserted in support of the legal counts and Prayers for Relief in the Complaint, even if presumed to have once been true, are moot, as a matter of fact. As a result of such dismissal, the Court need not rule on the School District's Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

### B. FED.R.CIV.P. 12(b)(6)

Alternatively, should the Court not grant the instant Rule 12(b)(1) Motion, the Complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6), which provides for the dismissal of a complaint for failure to state a claim upon which relief may be granted. When it appears from the face of a pleading that the plaintiff can prove no set of facts that would entitle him to relief, the Court must dismiss plaintiff's claims. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *McGovern, v. City of Philadelphia*, 554 F.3d 114, 115 (3rd Cir. 2009) (citing cases). Rule 12(b)(6) requires the Court to "accept as true all well-pleaded allegations of fact in the plaintiff's complaint and must view any reasonable inferences that may be drawn therefrom in the light most favorable to the plaintiff." *Craig v. Thomas Jefferson Univ*., 2009 WL 2038147, *2 (E.D. Pa. 2009) (citing cases). However, the "factual allegations [in a complaint] must be enough

to raise a right to relief above the speculative level" and the plaintiff must do more than provide a "formulaic recitation of the elements of a cause of action…." *Twombly v. Bell Atlantic Corp.,* 550 U.S. 544, 555 (2007).

In *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1950 (2009), the Supreme Court reiterated that "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Under *Iqbal*, a court must apply a two-step analysis when evaluating a Rule 12(b)(6) motion. *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir. 2009). The first step is to separate the factual and legal elements of the claim. *Id.* The Court "must accept all of the complaint's well-pleaded facts as true, [but it] may disregard any legal conclusions." *Id.* at 210-211. Next, the Court must evaluate ". . . whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement *with its facts*." *Id.* at 211 (citing *Iqbal* at 1950; *Phillips v. County of Allegheny*, 515 F.3d 224, 234-35 (3d Cir. 2009)).

In light of the foregoing standard of review, and for the following reasons, Plaintiff's Complaint must be dismissed for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6).

## III.    ARGUMENT

### A. Plaintiff's Complaint Must Be Dismissed Pursuant to Fed.R.Civ.P. 12(b)(1) For Lack of Subject-Matter Jurisdiction Because it Presents No Live Case or Controversy and its Claims are Moot.

Plaintiff seeks a declaration that a student club, "Retire the Raider," be provided with "the same access to school facilities as other noncurriculum-related student groups," and that the School District be enjoined from "continuing to unlawfully deny Retire the Raider the same access to District facilities that other noncurriculum-related student clubs enjoy." [ECF No. 1, Prayer for

5

Relief, a) - b)] The Complaint alleges that the School District's denial of recognition of Retire the Raider is based upon its position that Retire the Raider has been unable to recruit a faculty advisor. [ECF No. 1, ¶ 72] However, since the Complaint was filed, a faculty advisor was found, the student club was recognized and the student club operates as any other. *See*, Affidavit of William Clements, Ed.D., "Exhibit A." As a result, Plaintiff's Complaint seeking declaratory and injunctive relief should be dismissed as moot.

> The Third Circuit explained:

> The availability of declaratory [and injunctive] relief depends on whether there is a live dispute between the parties." *Powell v. McCormack*, 395 U.S. 486, 517-518, 23 L. Ed. 2d 491, 89 S. Ct. 1944 (1969) (citation omitted); *Jersey Cent. Power & Light Co. v. New Jersey*, 772 F.2d 35, 40 (3d Cir. 1985) ("A declaratory judgment is available only so long as there is an actual controversy [between] the parties.").

*Donovan v. Punxsutawney Area Sch. Bd.*, 336 F.3d 211, 216 (3d Cir. 2003).

Because here is no actual controversy between Plaintiff and the School District, the case should be dismissed.

The Constitution limits this court's jurisdiction to the adjudication of actual cases and controversies. U.S. CONST. art. III, § 2; *DeFunis v. Odegaard*, 416 U.S. 312, 316, 40 L. Ed. 2d 164, 94 S. Ct. 1704 (1974) (per curiam). "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496, 23 L. Ed. 2d 491, 89 S. Ct. 1944 (1969). The court's ability to grant effective relief lies at the heart of the mootness doctrine. *County of Morris v. Nationalist Mvmt.*, 273 F.3d 527, 533 (3d Cir. 2001). That is, "[i]f developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief, the case must be dismissed as moot." *Blanciak v. Allegheny Ludlum*

*Corp.*, 77 F.3d 690, 698-699 (3d Cir. 1996). In such a "factual attack" to a complaint under Rule 12(b)(1), "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that [subject matter] jurisdiction does in fact exist." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). This requirement that a case or controversy be "actual [and] ongoing" extends throughout all stages of federal judicial proceedings, including appellate review. *Khodara Envtl., Inc. v. Beckman*, 237 F.3d 186, 193 (3d. Cir. 2001). Presently, there is no actual and ongoing case or controversy between Plaintiff and the School District.

In Paragraph 55, of Plaintiff's Complaint, she alleges that recognized student clubs at Twin Valley High School receive "a host of privileges," which are identified by her in Paragraphs 56-57, 59-60, 62-64.[1] In paragraph 72 of the Complaint, Plaintiff alleges that "the [School] District has repeatedly refused to officially recognize Retire the Raider as a student club, purportedly because it has been unable to recruit a faculty advisor." (Compl. ¶ 72.) Plaintiff then alleges that: "As a result of the District's refusal to recognize it as a student club, Retire the Raider has been denied the following benefits and privileges accorded to other noncurriculum-related student clubs[.]" [ECF No. 1, ¶ 73] These alleged denied "benefits and privileges," further identified in Paragraph 73, correspond to the "host of privileges" alleged in Section B of the Complaint. Plaintiff alleges these same denied "benefits" in Paragraph 103 of the Complaint as well.[2] In other

---

[1] Paragraphs 58 and 61 do not allege any such privilege. Paragraph 58 makes reference to "Part D, *infra*;" however, there is no "Part D" (or Section D), in the Complaint.

[2] Subsection "c." of Paragraph 103 alleges denial of "the ability to advertise and recruit members on equal footing with other clubs[.]" This equates to the allegations of Paragraph 73, second and third bullet points, and corresponds to the "privileges" alleged in paragraphs 56 and 60 of the Complaint. Beyond these, there

words, each one of these allegedly denied benefits corresponds to an alleged "privilege" previously identified within ¶'s 56-57, 59-60, 62-64, of the Complaint. (*See*, ECF No. 1 and Affidavit of Dr. Clements, "Exhibit A," respectively.)

Accordingly, because Retire the Raider has acquired a faculty advisor and become an approved student club and is not being denied any of the alleged benefits and privileges "accorded to other noncurriculum-related student clubs" (ECF No. ¶ 73), all claims set forth in the Complaint are moot. Put another way, there is no live case or controversy, and this Court lacks subject matter jurisdiction over this case. The Complaint must be dismissed pursuant to Fed.R.Civ.P. 12(b)(1).

## B. Plaintiff's Claims Set Forth Under 42 U.S.C. § 1983 Must Be Dismissed Pursuant to Fed.R.Civ.P. 12(b)(6) For Failure to State a Claim For Relief Because She Has Identified No Official Policy or Custom of the School District to Support Such a Claim.

In her Complaint, Plaintiff alleges that the School District violated her First Amendment rights by refusing to "officially recognize" RTR as a student club due to its inability to recruit a willing faculty advisor, and denying RTR the same benefits afforded to "officially recognized" student clubs. Even accepting the factual allegations of the Complaint as true for purposes of ruling on the School District's Rule 12(b)(6) motion, such allegations fail to set forth a *prima facie* case against the School District under 42 U.S.C. § 1983. More specifically, in light of the Plaintiff's failure to allege that the actions complained of were taken pursuant to any practice, policy or custom of the School District, the Plaintiff's Section 1983 claims should be dismissed.

---

is no allegation in the Complaint that other student clubs have any other means of ability to advertise and recruit members.

As a matter of long-settled law, it is required for a Section 1983 plaintiff to identify a specific policy, practice or custom of a School District that allegedly resulted in its claimed violation of the plaintiff's civil right guaranteed by Section 1983. *See. e.g*., *Marran v. Marran*, 376 F.3d 143, 156 (3d Cir. 2004):

> Assuming, *arguendo*, that Librett properly alleged a constitutional violation, Librett did not allege that a policy or custom of the [Montgomery County Office of Children and Youth] led to the violation. This is an essential part of a § 1983 claim against a county. Without an allegation of a policy or custom, Librett has not stated a *prima facie* case, and the District Court properly dismissed the claim without permitting discovery.

*See also*, *Monell v. Dep't of Soc. Servs.*, 98 S. Ct. 2018, 2037-2038 (2018) ("[It] is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent  official policy, inflicts the injury that the government as an entity is responsible under § 1983."); *Carswell v. Borough of Homestead*, 381 F.3d 235, 244-245 (3d Cir. 2004) ("There must be "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation."") (citing *Brown v. Muhlenberg Township*, 269 F.3d 205, 214 (3d Cir. 2001) (quoting City of Canton, 489 U.S. at 385); and *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 761 (3d Cir. 2019):

> The District next argues that even if Baloga can establish a constitutional violation, the District itself could not be held liable because there is no evidence that any municipal policy or custom caused that violation. *See Monell*, 436 U.S. at 690-91. A municipality may be held liable pursuant to 42 U.S.C. § 1983 only if a plaintiff is able to identify such a policy or custom. *See A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 580 (3d Cir. 2004). That requires a plaintiff to show, for a policy, that an official with final decision-making authority has "issue[d] an official proclamation, policy, or edict," *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990), or, for a custom, that a course of conduct, though not authorized by law, was "'so permanent and well settled' as to virtually constitute law," *id.* (quoting *Monell*, 436 U.S. at 690). In either case, the policymaker, as defined under state law, must be "responsible either for the policy or, through acquiescence, for the custom." *Andrews*, 895 F.2d at 1480-81.

Moreover, as held by the Third Circuit Court in *Marran*, *supra*, omission of the necessary factual allegations to support a plaintiff's Section 1983 claim is not excused simply because discovery has not been completed. *See also*, *McGovern v. City of Philadelphia*, 554 F.3d 114, 121 n.5 (3d Cir. 2009):

> McGovern's assertion that he should be entitled to discovery in order to marshal facts to support his theory that the City discriminated against him pursuant to an official policy or custom is misguided. Our review of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is limited to the contents of the complaint. *Yarris v. County of Delaware*, 465 F.3d 129, 134 (3d Cir. 2006). Nowhere in his complaint does McGovern allege that the City maintained a policy or custom to retaliate against or otherwise mistreat Caucasian employees. Absent such an allegation, McGovern has not stated a *prima facie* case, and the District Court properly dismissed the claim without permitting discovery.

It is clear, therefore, that the foregoing precedential case law must be applied in reviewing the sufficiency of Plaintiff's legal claims asserted under Section 1983, that being her First and Fourteenth Amendment claims -- and her Equal Access Act claim should it be deemed to have been brought under Section 1983.[3] Because Plaintiff's Complaint makes no factual allegation that a policy or custom of the School District deprived her of rights to which she was entitled by the First or Fourteenth Amendments to the U.S. Constitution -- and should the Court consider it – a

---

[3] It is not clear as written in Paragraph 16 of the Complaint whether Plaintiff is intending to include her Equal Access Act claim "under 42 U.S.C. § 1983," or as a discrete claim. In case of the former, the Third Circuit Court has held that the Equal Access Act creates judicially enforceable obligations and a private cause of action for injunctive relief by implication, so that reliance on Section 1983 to pursue a claim for relief is not warranted. *See, Student Coalition for Peace v. Lower Merion School Dist. Bd. of School Directors*, 776 F.2d 431 (3d Cir. 1985): "[T]he absence of any express remedial provision suggests that Congress intended for us to imply an appropriate remedy. We would be extremely reluctant to conclude that Congress intended to create mandatory duties but no means of enforcing them. …. We hold, therefore, that appellants may maintain a private cause of action for an injunction under the Equal Access Act." *Id.*, at 440, 441. "In view of this conclusion, we need not decide whether a section 1983 action may be brought to enforce the Act." *Id.*, at 441 n.8.

violation of her Equal Access Act right to use of the School District's open limited forum created for approved student clubs, these claims should be dismissed for failure to state a claim for relief pursuant to Federal Rule of Civil Procedure 12(b)(6).

### C. Plaintiff's Equal Access Act Claim Must Be Dismissed Pursuant to Fed.R.Civ.P. 12(b)(6) For Failure to State a Claim For Relief Because the School District Requirements for Approved Student Clubs are Content Neutral.

In "Claim II, Violation of the Equal Access Act, 20 U.S.C. § 4071 et seq." of Plaintiff's Complaint, she alleges:

> The District's requirement that Retire the Raider secure a willing faculty advisor in order to hold meetings on the same terms as other noncurriculum-related groups constitutes discrimination on the basis of the content of the meetings, in violation of the EAA.

[ECF No. 1, ¶ 104]  In other words, Plaintiff claims that the School District's requirement that all noncurriculum-related student clubs have a faculty advisor constitutes a violation of the EAA against Retire the Raider on the basis of the content of its meetings. However, that such a requirement applies to ALL noncurriculum-related student clubs, as Plaintiff asserts, belies her EAA claim in the first instance. As held in *Thompson v. Waynesboro Area School Dist.*, 673 F.Supp. 1379 (M.D.Pa. 1987):

> On its face, the Act obviously guarantees students of public, secondary schools that they will have the opportunity to conduct *meetings* in school *as long as certain conditions are met*. The term "meeting" is defined specifically in the Act to include ". . . those activities of student groups which are permitted under a school's limited open forum and are not directly related to the school curriculum." 20 U.S.C. § 4072(3).

*Id*., at 1382-1383 (bold emphasis added). Here, Plaintiff factually alleges no more than that the School District uniformly applied the condition that noncurriculum-related student clubs must have a faculty advisor. Her allegation that application of this condition to Retire the Raider is violative of the EAA "on the basis of the content of [its] meetings" is a legal conclusion that merely

invokes the "magic words" for stating a claim under the EAA.  However, "A plaintiff must assert more than "labels and conclusions." *Twombly v. Bell Atlantic Corp.,* 550 U.S. 544, 555-556 (2007). "After *Twombly*, it is no longer sufficient to allege mere elements of a cause of action; instead "a complaint must allege facts suggestive of [the proscribed] conduct." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2009) (quoting *Twombly*). Moreover, not only is Plaintiff's legal conclusion incompatible with her factual allegation, it also completely ignores the content-neutral nature of the faculty advisor requirement that applies to all approved noncurriculum-related student clubs.

Section 4071 of the EAA ("EAA") provides, in part:

> **(a) Restriction of limited open forum on basis of religious, political, philosophical, or other speech content prohibited.** It shall be unlawful for any public secondary school which receives Federal financial assistance and which has a limited open forum to deny equal access or a fair opportunity to, or discriminate against, any students who wish to conduct a meeting within that limited open forum *on the basis of the religious, political, philosophical, or other content of the speech at such meetings*.
>
> **(b) "Limited open forum" defined.** A public secondary school has a limited open forum whenever such school grants an offering to or opportunity for one or more noncurriculum related student groups to meet on school premises during noninstructional time.

20 U.S.C. § 4071(a)-(b) (bold in original; italics added). Nothing in the EAA provides that a noncurriculum-related student club may hold meetings on school premises regardless of its inability to satisfy a clearly reasonable condition. In fact, the EAA itself provides as much:

> **(f) Authority of schools with respect to order, discipline, well-being, and attendance concerns.** Nothing in this title [20 USCS §§ 4071 et seq.] shall be construed to limit the authority of the school, its agents or employees, to maintain order and discipline on school premises, to protect the well-being of students and faculty, and to assure that attendance of students at meetings is voluntary.

20 U.S.C. § 4071(f) (bold in original).

Further, the text of the Equal Access Act shows that Congress assumed that "employees of agents" of a school would be present at student club meetings. 20 U.S.C. § 4071(c)(3). The Act specifies that schools will be deemed to have provided equal access if "employees or agents of the school or government are present at religious meetings only in a nonparticipatory capacity." *Id.* This text implies that Congress not only expected adult supervision of student clubs, it also expected employees or agents of a school to be active participants in meetings, save those with religious content.

The condition that a noncurriculum-related student club must have a faculty advisor in order to hold meetings on school premises does not in any logical way relate to the content of any approved clubs' meetings, most particularly where it is applied uniformly. The Complaint is devoid of any factual allegation of support that the School District required Retire the Raider to have a faculty advisor because of the content of its meetings. It is especially clear here, where the requirement to have a faculty advisor applies to all approved student clubs, that it is a reasonable condition and has no bearing on the content of any one group's speech or meetings. Such conditions are absolutely permitted under the EAA. *See, e.g.*, *Alpha Delta Chi-Delta Chptr v. Reed*, 648 F.3d 790, 797 (9th Cir. 2011) (cert. denied, 565 U.S. 1260, 132 S. Ct. 174):

> In a limited public forum, the government may impose restrictions that are "reasonable in light of the purpose served by the forum," so long as the government does not "discriminate against speech on the basis of its viewpoint." *Rosenberger v. Rector & Visitors of Univ. of Va*., 515 U.S. 819, 829, 115 S. Ct. 2510, 132 L. Ed. 2d 700 (1995) (internal quotation marks omitted).

Presently, there are no factual allegations in the Complaint to raise a reasonable inference that the faculty advisor requirement for approval of noncurriculum-related student clubs, as applied to Retire the Raider, is based "on the content of the speech at [its] meetings" in violation of the

13

EAA. As Plaintiff's Complaint fails to raise a plausible claim for relief under the EAA, this claim must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

## IV.    Conclusion

Based upon the foregoing, Defendant, Twin Valley School District, respectfully requests that its Motion for Dismissal of Plaintiff's Complaint pursuant to Fed.R.Civ.P. No. 12(b)(1) be granted and that an Order be entered dismissing Plaintiff's Complaint with prejudice. In the alternative, should this Honorable Court not dismiss Plaintiff's Complaint pursuant to Fed.R.Civ.P. No. 12(b)(1), then in such case, Defendant respectfully requests an Order dismissing Plaintiff's Complaint pursuant to Fed.R.Civ.P. No. 12(b)(6).

Respectfully submitted,

LEVIN LEGAL GROUP, P.C.

/s/ James J. Musial

Date:   January 16, 2025

_____
Michael I. Levin, Esquire
James J. Musial, Esquire
1800 Byberry Road, Suite 1301
Huntingdon Valley, PA 19006
Phone: 215.938.6378
mlevin@levinlegalgroup.com
jmusial@levinlegalgroup.com
Attorneys for Defendant,
Twin Valley School District

# Exhibit "A"

# Exhibit "A"

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JANELLE WOLFE | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 5:23-cv-04501-JLS |
| | : | |
| TWIN VALLEY SCHOOL DISTRICT | : | |

## AFFIDAVIT OF DR. WILLIAM CLEMENTS

1.  I, William Clements, an adult individual, am the Principal of Twin Valley High School. I have served in this capacity since January of 2014.

2.  I have reviewed the November 15, 2023 Complaint that is the subject of this matter.

3.  Paragraph 56 of the Complaint alleges that "only officially recognized student clubs appear in the list of clubs available on the school's website." Paragraph 73 of the Complaint, third bullet point, alleges that Retire the Raider has been denied "Inclusion on the Twin Valley School Students Activities page on the District's website…." Paragraph 103(d) alleges that Retire the Raider has been denied "being listed on the Twin Valley High School Activities webpage[.]"

4.  First, there is no mechanism by which student clubs at Twin Valley High School are "officially recognized." Rather, student clubs are approved by me as High School Principal in accordance with the following process, which has been published on the High School's website since February 3, 2022:

    > Students interested in starting new clubs at Twin Valley High School should adhere to the following process:
    > 1.  Identify a faculty or staff member willing to serve as the advisor.
    > 2.  Complete a "Request to Meet With an Administrator" form in the High School Office. Note the name of the proposed club under "Reason for meeting".

      3.  Meet with the principal to request approval to move forward. Discuss the purpose of the club and what events would take place for the club (meetings, fundraisers, etc.).
      4.  If approved, advertise the first meeting with a flyer authorized by the advisor.

5.     Retire the Raider has been an approved student club since November 17, 2023, the date that high school teacher Kathy Ellis was appointed as the club's advisor, after she offered to serve as the club's advisor that same day. High school teacher Michael Mannix became a co-advisor for the club on December 12, 2023 after he too volunteered to do so. Both teachers continue to serve as advisors to the Retire the Raider student club. All approved student clubs must have a faculty or staff member advisor.

6.     Contrary to Paragraph 73 of the Complaint, the Retire the Raider student club is and has been included on the list of clubs available on the school's website at its "TVHS Activities" webpage. To view the list of clubs that appear on the school's website, one can open the Twin Valley High School homepage at https://tvhs.tvsd.org/ and click on "Clubs & Activities." This opens the "TVHS Activities" page which lists numerous school clubs and activities, including the Retire the Raider club.

7.     The Retire the Raider club is listed as follows on the "TVHS Activities" page on the school's website:



## RETIRE THE RAIDER

**Purpose:**

We aspire to educate our students, teachers, and
alumni on indigenous history in order to provide a better
atmosphere of respect and appreciation.  Our primary
goal is to have the Twin Valley School District
discontinue and eventually remove, all indigenous
imagery and references.  Twin Valley's Raider mascot
and imagery is historically inaccurate and culturally
insensitive.

**Meetings & Activities:**

Officers meet once a month before school and all other
members meet during flex.

**Advisors:**

K. Ellis/M. Mannix

8.      Paragraph 57 of the Complaint alleges that "Officially recognized student clubs are

permitted to hold regular meetings in school facilities. Paragraph 59 alleges that "only

officially recognized students clubs are allowed to meet during "flex" time, which occurs

during school hours," and Paragraph 73 of the Complaint, first bullet point, alleges that

Retire the Raider has been denied "The ability to hold regular meetings at school, including

during "flex" time, which is part of the school day." Paragraph 103(a) and (b) of the

Complaint alleges that Retire the Raider has been denied (a) "the ability to have regular

meetings[,]" and (b) "the ability to meet during flex time[.]"

9.      Based upon my firsthand knowledge, and as evidenced by the "Retire the Raider" listing

that appears on the Twin Valley High School website, the Retire the Raider club is and has

been permitted to hold regular meetings in school, during "flex" time, which are periods of

time that occur during school hours.

3

10.    Further, any student club's ability to hold meetings during flex time depends on the availability of the club's advisor during that period.

11.    Paragraph 60 of the Complaint alleges that "Officially recognized student clubs are also permitted to advertise on a large, spacious wall within the high school where students expect to find information about clubs and events." Paragraph 61 alleges that "[O]ther student groups who wish to distribute messages are relegated to a much smaller, less prominent wall near the entrance of the school," and Paragraph 73 of the Complaint, second bullet point, alleges that Retire the Raider has been denied "The ability to post flyers in the same manner as officially recognized student clubs." Paragraph 103(c) of the Complaint alleges that Retire the Raider has been denied "the ability to advertise and recruit members on equal footing with other clubs[.]"

12.    Retire the Raider and other approved student clubs are permitted to post flyers on any school hallway wall and Retire the Raider as an approved student club has done so. Prior to becoming an approved student club on November 17, 2023, Retire the Raider was restricted to posting in an area outside of the main office that is designated for the posting of non-school materials.

13.    Paragraph 62 of the Complaint alleges that "Only officially recognized student clubs are included in the club list on the community surveys sent out to students and parents in the Fall." Paragraph 73 of the Complaint, fourth bullet point, alleges that Retire the Raider has been denied "Inclusion on the list of clubs in the community surveys provided to parents and students." Paragraph 103(c) of the Complaint alleges that Retire the Raider has been denied "the ability to advertise and recruit members on equal footing with other clubs[.]"

4

14.    No surveys with a list of student clubs has been sent out to students or parents since the Fall of 2022.

15.    In August of 2023, and in August of 2024, a list of the high school's approved student clubs was provided to students attending Freshman and New Student Orientation. The list of clubs was made accessible to the students via a QR Code printed on a single-sheet map of the school that was provided to them. (A copy of the map with the QR code for "TVHS Student Activities" is attached hereto as **Exhibit A**.) Scanning the QR code provides a link to the "TVHS Activities" webpage. Retire the Raider was included on this list made accessible via the QR code in August of 2024, as it has been an approved student club since November 17, 2023.

16.    In the Fall of 2022, the High School conducted a survey of students and a survey of parents that each included a list of the high school's approved student clubs. No such surveys have been conducted since that time.

17.    The Fall of 2022 student surveys included such questions as: "During the 2021-2022 school year (last year), what High School-sponsored sports were involved in? [sic] Check all that apply[,]" and, "During the 2021-2022 school year (last year), what High School-sponsored clubs, activities, or organizations were you involved in? Check all that apply." (A copy of these completed survey question pages are attached hereto as **Exhibit B**.)

18.    The Fall of 2022 parent surveys included such questions as: "During the 2021-2022 school year (last year), what High School-sponsored sports was/were your student(s) involved in? Check all that apply[,]" and, "During the 2021-2022 school year (last year), what High School-sponsored clubs, activities, or organizations was/were your student(s) involved in?

Check all that apply." (A copy of these completed survey question pages are attached hereto as **Exhibit C**.)

19.    Paragraph 64 of the Complaint alleges that "Only official clubs can have a student activity account to raise and manage funds under school policy." Paragraph 63 of the Complaint alleges that "Only officially recognized student clubs are eligible to receive Twin Valley Community Education grants." Paragraph 73 of the Complaint, fifth bullet point, alleges that that Retire the Raider has been denied "Access to certain financial benefits, including [1] a school-managed student activity account and [2] Twin Valley Community Education grants." Paragraph 103(e) and (f) of the Complaint alleges that Retire the Raider has been denied (e) "the ability to have a school-managed student activity account[,]" and (f) "the ability to apply for Twin Valley Community Education grants."

20.    As an approved student club, Retire the Raider is eligible for a student activity account. We do not create such an account until an approved student club starts to fundraise or has financial transactions. Retire the Raider has never applied to have a student activity account.

21.    Twin Valley Community Education grants are funded by the Twin Valley Community Education Foundation ("TVCEF"), an outside organization. When Twin Valley High School staff complete a TVCEF grant application, they submit it to me for my review and signature. A copy of the TVCEF Grant Application and Application Guidelines are available from its website at https://tvcef.org in the drop-down menu under "Our Impact." I do not recall ever receiving an application from Retire the Raider, but they would be eligible to submit one.

6

22.     I, William Clements, do hereby swear that the above facts set forth in this Affidavit are

true and correct to the best of my knowledge and belief.  I make these statements knowing

that they are subject to penalty for perjury under the laws of the United States of America.


Date: _1/14/2025_____          Signature: _____

                                                    William Clements, Ed.D.

# Exhibit "A"

# Exhibit "A"

TVHS Student Activities

Scan the QR code for a list of our clubs and activities available.

First Floor

Second Floor

District Office

District Conference Room

| 300A | 301A |
| 300B | 301B |
| 302 | 303 |
| 304 | Lav |
| 306 | 307 |
| 308 | 309 |
| 310 | 311 |
| 312 | 313 |
| 314 | 315 | 317 |

305
204
202
200
122
Library
203
Media Center
201
117
115
113
111
120
118
114
112
108
107

Nurse
Transition Coordinator
Guidance Office

528
527
Gym
Locker Room
Locker Room
Aux. Gym
Athletic Offices
Cafeteria
506
504
502
503
500B
500A
402
400
105
Lav
100
701
703 Lav
700
702
704
705
706
707
708
709
710
711
712
713
714
715
716
717
718
719

HS Admin Offices
Auditorium

603
601
607
606
611
Lav
625
615
617
619
621
623
605
602
604
600
606

# Exhibit "B"

# Exhibit "B"

## Q2 During the 2021-2022 school year (last year), what High School-sponsored sports were involved in? Check all that apply.

Answered: 243    Skipped: 297



Twin Valley School District Clubs, Sports, & Activities Student Participation Survey | High School



## Q3 During the 2021-2022 school year (last year), what High School-sponsored clubs, activities, or organizations were you involved in? Check all that apply.

Answered: 282    Skipped: 258



Twin Valley School District - Clubs, Sports, & Activities Student Participation Survey | High School



# Exhibit "C"

# Exhibit "C"

Twin Valley School District-Clubs, Sports & Activities Parent Participation Survey | High School

## Q2 During the 2021-2022 school year (last year), what High School-sponsored sports was/were your student(s) involved in? Check all that apply.

Answered: 112   Skipped: 75



Twin Valley School District Clubs, Sports & Activities Parent Participation Survey | High School



Twin Valley School District-Clubs, Sports & Activities Parent Participation Survey-High School

## Q3 During the 2021-2022 school year (last year), what High School-sponsored clubs, activities, or organizations was/were your student(s) involved in? Check all that apply.

Answered: 118    Skipped: 69



Twin Valley School District - Class, Sports, & Activities Parent Participation Survey | High School

